In the Matter of WEBR, INC., et al., Petitioners, v STATE TAX COMMISSION, Respondent.

Third Department, August 4, 1977

*Falk, Siemer, Glick, Tuppen & Maloney (Edwin H. Wolf* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Nigel G. Wright* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, J. The petitioner WEBR, Inc. entered into an agreement with Queen City Radio Corp. (Queen City) whereby WEBR was to sell to Queen City a radio station business including all of its personal property. The sale was for the sum of $1,750,000; however, the parties did not allocate in the agreement the portion thereof applicable to personal property. It appears that the closing of title occurred on or about September 2, 1971 and that Queen City was to allocate the amount applicable to personal property and pay the sales tax.

Paragraph (3) of subdivision (b) of section 1101, together with section 1105 of the Tax Law, provide that a *sales tax* must be paid on the *sales price* of the sale of the personal property at issue in this proceeding. The parties to this transaction did not at any time formally allocate a portion of the purchase price to the personal property; however, in October of 1971 a sales tax report of the property at "book value" of about $24,000 was reported and a tax of $1,675 was paid.

An appraisal firm engaged by Queen City prepared a detailed analysis of the assets of WEBR, Inc., included in which were five different methods of appraisal:

(1) Costs less depreciation;
(2) Reproduction costs less depreciation;

(3) Turn-key value;

(4) Appraised value;

(5) Market value.

The petitioners contend that their election to use "cost less depreciation" value was proper under the circumstances and that the Tax Commission's imposition of tax based upon "market value" was arbitrary and capricious.

The accountant that "set up the books" for Queen City following its purchase testified that he used a total figure of $347,041 as the value of the personal property at issue.

The petitioners, had they so elected, could have made an allocation as to the sales price of the real property and the sales price of the personal property which, of course, would be subject to review as to fairness and provable basis for such allocation. Having elected not to follow such procedure the State Tax Commission measured the tax not against the total price of the sale but rather allocated that price between what would be taxable and nontaxable assets according to the relative values as shown on the petitioners' appraisal. The Tax Commission had the right, indeed, the obligation, to arrive at a fair *sales price* of the personal property for *sales tax purposes.*

It should be noted that the petitioner's brief makes the following comment: "The Appraisal clearly states that Market Value was arrived at mathematically to reflect the actual price paid."

Upon the present record it appears that there is substantial evidence supporting the Tax Commission's reliance upon the "market value" figure of $347,041 as being the price paid for the personal property. We do not find its refusal to adopt the lower sum urged by WEBR as being an arbitrary act in view of the fact that the Queen City books have used the "market value" figures for other purposes and did not revise them at any time.

The determination should be confirmed, and petition dismissed, without costs.

KOREMAN, P. J., KANE, MAHONEY and LARKIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.